PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2023
_____

ARIEL GONZALEZ,
                                    Appellant

v.

WATERFRONT COMMISSION OF
THE NEW YORK HARBOR
_____


On Appeal from the United States District Court
for the District of New Jersey
District Court No. 2-13-cv-00978
District Judge: The Honorable Faith S. Hochberg
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 4, 2014

Before: RENDELL, SMITH, and HARDIMAN,
*Circuit Judges*

(Filed: June 17, 2014)

Michael A. Bukosky, Esq.
Marcia J. Tapia, Esq.
Loccke, Correia, Limsky & Bukosky
24 Salem Street
Hackensack, NJ 07601
        *Counsel for Appellant*

Phoebe S. Sorial, Esq.
Waterfront Commission of New York Harbor
39 Broadway, 4th Floor
New York, NY 10006
        *Counsel for Appellee*

———————————

OPINION

———————————

SMITH, *Circuit Judge.*

Ariel Gonzalez filed this action against his former employer, the Waterfront Commission of the New York Harbor (the "Commission"), seeking to enjoin disciplinary proceedings initiated by the Commission as a violation of his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the First Amendment. The

2

United States District Court for the District of New Jersey denied Gonzalez's motion and ultimately stayed and administratively terminated this suit based on its conclusion that the *Younger*[1] abstention doctrine precluded federal interference with the ongoing state disciplinary proceedings. During the pendency of this appeal, the Supreme Court issued its decision in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), which provides clarity to the abstention inquiry and defines the outer boundaries of the abstention doctrine. Reviewing this appeal in light of *Sprint*, we conclude that the decision to abstain was appropriate. Accordingly, we will affirm.

I.

The Waterfront Commission of the New York Harbor is a bi-state instrumentality of New Jersey and New York that was created in 1953 with a mission to investigate, deter, combat, and remedy criminal activity in the Port of New York-New Jersey. N.J. Stat. Ann. § 32:23-1 *et seq.* The Commission is a fully recognized law enforcement agency, and detectives of the agency are vested with all powers of a police officer in both states. N.J. Stat. Ann. § 32:23-86(4).

Gonzalez began his employment as a detective with the Commission in 1999, and he remained in this

---

[1]     *Younger v. Harris*, 401 U.S. 37 (1971).

position throughout the fourteen years preceding this litigation. In June 2012, a former coworker, Kimberly Zick, asked Gonzalez to assist her with a lawsuit she was bringing against the Commission that alleged employment discrimination under the ADA and Title VII. Gonzalez agreed and, on June 4, 2012, executed a sworn affidavit on Zick's behalf. On October 4, 2012, Zick's case was dismissed with prejudice for failure to state a claim upon which relief could be granted. *See* Order Granting Motion to Dismiss, *Zick v. Waterfront Comm'n of N.Y. Harbor*, No. 11-5093 (S.D.N.Y. Oct. 4, 2012).

Upon review of Gonzalez's affidavit, the Commission determined that it contained several materially false statements and that, under the collective bargaining agreement ("CBA") between the Commission and the Detectives' Endowment Association P.B.A. Local 195 (of which Gonzalez was a member), Gonzalez was subject to discipline for making these statements. On October 19, 2012, a few days after Zick's suit was dismissed, the Commission advised Gonzalez that he was the subject of an internal investigation related to the potentially false statements in his June 4, 2012 affidavit. As part of the investigation, on December 3, 2012, Gonzalez—represented by counsel—was questioned under oath by an internal affairs officer designated by the Commission. During the interrogation, Gonzalez maintained that the statements contained in the June 4,

4

2012 affidavit were true.

At the conclusion of the investigation, the Commission concluded that Gonzalez had indeed made false statements in the affidavit. On February 7, 2013, the Commission served Gonzalez with a Statement of Charges, alleging that he demonstrated a reckless disregard for the truth in making false statements in connection with Zick's case. Specifically, the Statement of Charges provided that "on or about June 4, 2012, [Gonzalez] executed a duly sworn affidavit, in which paragraphs 9, 16 and 17 contain false and inaccurate statements therein; and on December 3, 2012, [he] affirmed these false statements while testifying under oath during an administrative investigation into the false statements." App. 53.

Under Section 17 of the CBA, a law enforcement officer with the Commission may not be removed from employment or subjected to disciplinary penalties unless the charges are sustained following a hearing before an administrative law judge ("ALJ"). Gonzalez was advised that a hearing would be held on February 20, 2013, and that he had the right to be represented by counsel and to present witnesses and evidence on his behalf. Gonzalez was also advised that establishment of the charges could result in termination of his employment. At Gonzalez's request, the hearing was postponed until March 14, 2013. As permitted by the CBA, Gonzalez was suspended

5

without pay pending the determination of the charges by the ALJ.

On February 14, 2013, Gonzalez's counsel wrote to the Commission "requesting that Detective Gonzalez be immediately returned to active duty and that the charges be dismissed." App. 88. Counsel argued that "both the disciplinary charges as well as the underlying investigation are retaliatory action under the ADA and Title VII and should not have occurred." App. 87–88. The Commission responded in writing the same day, denying the request for reinstatement and dismissal of charges and contending that "Gonzalez's suspension is neither retaliatory nor discriminatory." App. 91.

A few days later, on February 19, 2013, Gonzalez filed this action in the United States District Court for the District of New Jersey, alleging violations under the ADA, Title VII, and the First Amendment. In his complaint, Gonzalez requested that the Court "[p]reliminarily, temporarily and permanently enjoin[] the defendant from suspending [him] without pay" and "from prosecuting, scheduling or conducting any disciplinary hearing." App. 19. Gonzalez also sought an order rescinding the charges and providing for compensatory damages.

On March 13, 2013, the District Court issued an order denying Gonzalez's request for a preliminary injunction. Applying the three-part test articulated in

*Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982), the Court concluded that the *Younger* abstention doctrine required dismissal of the federal suit because the state administrative hearing (1) was judicial in nature, (2) implicated important state interests, and (3) offered an adequate opportunity for Gonzalez to present his federal claims.

The hearing before the ALJ commenced the following day, March 14, 2013, and continued for two additional days on March 25 and 26, 2013. On the first day of the hearing, Gonzalez's counsel informed the ALJ about the District Court's order and asked whether Gonzalez would be permitted to prosecute his ADA and Title VII claims. The ALJ instructed that he would not entertain Gonzalez's retaliation claims:

> I can tell you that I'm not [going to consider the ADA and Title VII claims.] I don't have the authority to do it [and] I'm not prepared to do it. . . . I am here as a Hearing Officer on the internal matter only, not the rest of it.

App. 99–100.

On April 10, 2013, Gonzalez filed a notice of appeal from the District Court's order dismissing his federal suit. On June 16, 2013, while Gonzalez's appeal with this Court was pending, the ALJ issued a Report and

7

Recommendation to the Commission with detailed factual findings. The ALJ found that Gonzalez's June 4, 2012 affidavit was "replete with inaccurate statements of fact, most of which could have been verified beforehand with only a modest degree of diligence." App. 134. Weighing the importance of a law enforcement officer's credibility and truthfulness, the ALJ concluded that "termination of [Gonzalez's] employment is the only appropriate disposition." App. 135.

By decision dated July 15, 2013, the Commission followed the ALJ's recommendation and terminated Gonzalez's employment. On August 20, 2013, Gonzalez appealed his termination to the New Jersey Superior Court, Appellate Division (the "State Appeal"). *See In the Matter of the Internal Disciplinary Hearing of Detective Ariel Gonzalez*, No. A-6140-12 (N.J. Super. Ct. App. Div.). In addition to challenging the Commission's decision to terminate his employment, Gonzalez filed a Case Information Statement that also listed his ADA, Title VII, and First Amendment claims. Gonzalez's State Appeal remains pending as of the date of this decision.

## II.

The District Court had federal question jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because it arises following a stay and administrative termination under *Younger*. *See Hi Tech Trans, LLC v. New Jersey*, 382

8

F.3d 295, 302 (3d Cir. 2004).

"We exercise plenary review over whether the requirements for abstention have been met." *ACRA Turf, LLC v. Zanzuccki*, 748 F.3d 127, 132 (3d Cir. 2014) (quoting *Miller v. Mitchell*, 598 F.3d 139, 145–46 (3d Cir. 2010)).

III.

It has long been said that "[w]hen a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction." *Willcox v. Consol. Gas Co. of N.Y.*, 212 U.S. 19, 40 (1909); *see also Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821) (stating that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given"). As a "general rule," this longstanding principle—that federal courts are obliged to hear and decide cases within the scope of their jurisdiction—is unimpeded by parallel state proceedings involving the same or similar subject matter. *Sprint*, 134 S. Ct. at 588 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). This rule, however, is not absolute. The Supreme Court has recognized that federal adjudication may, in certain circumstances, unduly interfere with ongoing state proceedings such that abstention is necessary to "accord[] appropriate deference to the 'respective competence of the state and federal court

9

systems.'" *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 415 (1964) (quoting *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959)).

Although not the Supreme Court's first abstention case, *Younger v. Harris*, 401 U.S. 37 (1971), is now identified as the landmark decision in the field and the eponym of this subclass of the abstention doctrine. In *Younger*, the Supreme Court held that, absent a showing of bad faith or an intent to harass, federal courts should decline requests to enjoin state criminal prosecutions, "particularly . . . when the moving party has an adequate remedy" in state court. 401 U.S. at 43. Although crafted in the criminal context, "the Supreme Court has since extended *Younger*'s application to bar federal interference with certain state civil and administrative proceedings." *ACRA Turf*, 748 F.3d at 132 (providing a detailed discussion of the development of the abstention doctrine from *Younger* through *Sprint*).

As *Younger* was expanded to new categories of cases, lower courts struggled to pinpoint the doctrine's outer limits and, as a result, increasingly declined to exercise federal jurisdiction when the subject matter of the federal suit was also implicated in a parallel state proceeding. *See ACRA Turf*, 748 F.3d at 135; *see also* Joshua G. Urquhart, *Younger Abstention and Its Aftermath: An Empirical Perspective*, 12 Nev. L.J. 1, 9

10

n.62 (2011) (discussing empirical finding that, between 1995 and 2006, a party seeking abstention under *Younger* was successful 51.6 percent of the time). Although professing to merely restate abstention principles found in its existing precedent, the Supreme Court's recent decision in *Sprint* goes a long way toward erasing any uncertainties about *Younger*'s reach. *Sprint* provides a forceful reminder that abstention is not the presumptive course, but rather an exception to the general rule that federal courts must hear and decide cases within their jurisdiction. 134 S. Ct. at 588. According to the Court, *Younger* can overcome this general rule in only three "exceptional" classes of cases: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 373 (1989)). "[T]hese three 'exceptional' categories," said the Court, "define *Younger*'s scope." *Id.* at 591.

As in *Sprint*, this appeal concerns a state proceeding falling in the second category—civil enforcement proceedings. But not all state civil enforcement proceedings are treated equally, nor do all require federal abstention. Instead, as *Sprint* explains, abstention generally is appropriate only where the state civil enforcement proceeding is "'akin to a criminal

11

prosecution' in 'important respects.'" 134 S. Ct. at 592 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). *See also Middlesex*, 457 U.S. at 432 (stating that *Younger* abstention is appropriate where "noncriminal proceedings bear a close relationship to proceedings criminal in nature"). In *Sprint*, the Court noted that quasi-criminal proceedings of this ilk share several distinguishing features. They "are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Sprint*, 134 S. Ct. at 592. "[A] state actor is routinely a party to the state proceedings and often initiates the action." *Id.* And finally, they often begin with internal investigations that "culminat[e] in the filing of a formal complaint or charges." *Id.*

In focusing the abstention inquiry on whether the state proceeding is quasi-criminal, *Sprint* explicitly eschewed exclusive reliance on the three *Middlesex* factors. In *Middlesex*, the Court noted that abstention is appropriate where there is an ongoing state proceeding that (1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges. *Middlesex*, 457 U.S. at 432. Over the years following *Middlesex*, lower courts engaged in a routine practice of exclusively applying these three factors as if they were the alpha and omega of the abstention inquiry. In *Sprint*, the Court repudiated this practice, explaining that the *Middlesex* conditions

12

were never intended to be independently dispositive, but "were, instead, *additional* factors appropriately considered by the federal courts before invoking *Younger*." *Sprint*, 134 S. Ct. at 593 (emphasis in original). Importantly, the Court instructed that the *Middlesex* factors cannot be "[d]ivorced from their quasi-criminal context." *Id.*

Using *Sprint* as our guide, we recently reversed a district court's decision to dismiss a suit on *Younger* abstention grounds. *See ACRA Turf*, 748 F.3d 127. In 2002, the New Jersey legislature passed a law allowing for the establishment of fifteen off-track wagering ("OTW") facilities. *Id.* at 129. Pursuant to a condition in the law, the rights to establish and license these facilities were allocated by contract to three entities—the New Jersey Sports and Exposition Authority, ACRA Turf, LLC ("ACRA"), and Freehold Raceway Off Track, LLC ("Freehold"). *Id.* Disappointed by the slow pace at which the OTW facilities were being opened, New Jersey amended the law in 2011 to require rights holders to submit petitions demonstrating that they were "making progress" toward opening their allotted facilities in order to avoid forfeiture of their rights. *Id.* at 129–30. ACRA and Freehold responded by submitting petitions specifying their ongoing efforts to open new facilities and, in addition, also contended that the amendments violated their constitutional rights under the Contracts, Takings, Due Process, and Equal Protection Clauses of

13

the United States Constitution. *Id.* at 130. They also filed suit in federal court challenging the amendments on the same constitutional grounds and seeking to enjoin their enforcement. *Id.*

Applying *Middlesex* and noting that ACRA and Freehold asserted their constitutional challenges in their progress petitions—which were presented to an administrative body whose decision was appealable to the New Jersey courts—the district court dismissed the federal suit on *Younger* abstention grounds. Applying *Sprint*, we reversed. We noted that the state proceeding did "not bear any of the hallmarks that *Sprint* and its predecessors identify with quasi-criminal actions." *ACRA Turf*, 748 F.3d at 138. "It was not initiated by the State in its sovereign capacity," but rather by the plaintiffs when they submitted their progress petitions. *Id.* There was no preliminary investigation or formal charges, nor was there evidence that the proceeding "was commenced to sanction Plaintiffs for some wrongful act." *Id.* at 139. And finally, "there [was] no indication that the policies implicated in the state proceeding could have been vindicated through enforcement of a parallel criminal statute." *Id.* Accordingly, we held that abstention was inappropriate because the state proceeding was no "more akin to a criminal prosecution than are most civil cases." *Id.* (quoting *Huffman*, 420 U.S. at 604).

Unlike *ACRA Turf*, this case fits neatly within the

14

quasi-criminal framework outlined in *Sprint*. Gonzalez's troubles began when the Commission suspected that he had made several materially false statements in his June 4, 2012 affidavit. The Commission internally investigated the falsity of these statements and, after confirming them to be untruthful, lodged a formal Statement of Charges against Gonzalez. By filing this formal Statement of Charges, the Commission—an arm of the State of New Jersey—initiated the administrative disciplinary hearing to sanction Gonzalez for his "wrongful" conduct. This is a textbook example of a quasi-criminal action.

This is not the type of situation we confronted in *ACRA Turf*, where the "penalty" imposed by the statute was in reality just an attempt by the State to induce the plaintiffs to exercise their rights in a particular way. In that case, there was no suggestion that the plaintiffs' conduct was unlawful or even morally wrongful. *See ACRA Turf*, 748 F.3d at 140. In marked contrast, the disciplinary hearing in this case was unquestionably designed to sanction (or punish) Gonzalez for conduct the State deemed contemptible. And the "sanction" is clear; if the charges were sustained, Gonzalez faced termination of his employment. *Compare Middlesex*, 457 U.S. at 427 (abstaining in a matter concerning a disciplinary hearing which subjected federal plaintiff, a lawyer, to disbarment). Significantly, New Jersey could have vindicated similar interests by enforcing its criminal

15

perjury statute, N.J. Stat. Ann. § 2C:28-1. *See Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (supporting its decision to abstain by pointing out that "[t]he state authorities also had the option of vindicating these policies through criminal prosecutions").

In sum, we conclude that the state disciplinary proceeding involved in this appeal bears the hallmarks of the quasi-criminal proceedings discussed by the Supreme Court. It was initiated by a state actor following an internal investigation and the filing of formal charges for the purpose of sanctioning Gonzalez for his wrongful actions. Given these circumstances, we hold that Gonzalez's disciplinary hearing and the pending State Appeal are indeed "akin to a criminal prosecution."

IV.

The fact that the state proceeding was quasi-criminal in nature, however, does not end our inquiry, as we must also consider whether the three *Middlesex* factors are satisfied. *See Sprint*, 134 S. Ct. at 593 (noting that, after concluding a state proceeding is quasi-criminal, the three *Middlesex* conditions are "additional factors appropriately considered by the federal court before invoking *Younger*"). These factors include: (1) whether there is an ongoing state proceeding that was judicial in nature, (2) whether that proceeding implicates important state interests, and (3) whether the state proceeding provides an adequate opportunity for

16

Gonzalez to raise his federal claims. Because each of these factors is satisfied in this case, we conclude abstention is the proper course.

There was certainly an ongoing state proceeding at the time the District Court entered its abstention order. Gonzalez was entitled to present the facts and evidence in an open hearing before an ALJ, who was empowered to make factual determinations with respect to the charges filed by the Commission. This hearing was unquestionably judicial in nature as it afforded Gonzalez with an opportunity to be heard, the right to be represented by counsel, and the right to present evidence and witnesses on his behalf.

We are not persuaded by Gonzalez's contention that because the administrative hearing was an internal procedure collectively negotiated as part of the CBA it should not be deemed "judicial." We fail to see why the fact that the disciplinary hearing was contractually mandated strips it of its judicial qualities. Nor do we see any principled basis for distinguishing this hearing from the types relied upon in other Supreme Court cases, including the state bar ethics committee's disciplinary hearing in *Middlesex*. And, at all events, the Commission's ultimate decision to terminate Gonzalez has since been appealed to an undeniably judicial forum—the New Jersey Superior Court, Appellate Division—where it remains pending as of the date of this

17

decision. *See Middlesex*, 457 U.S. at 436 (stating that "there is no reason for the federal courts to ignore . . . subsequent [procedural] development[s]" occurring during the pendency of an appeal). Consistent with the Supreme Court's repeated approach when confronted with administrative matters appealable to the state courts, "[w]e will assume . . . that an administrative adjudication and the subsequent state court's review of it count as a 'unitary process' for *Younger* purposes." *Sprint*, 134 S. Ct at 592 (citing *NOPSI*, 491 U.S. at 369). *See also ACRA Turf*, 748 F.3d at 138 n.9 ("We . . . assume, for purposes of this opinion, that the Commission's review . . . and the [appeal to the State appellate court] are both components of a single state proceeding."). Accordingly, we find there was and is an ongoing state proceeding that is judicial in nature.

We also have little trouble concluding that the state proceeding implicates important state interests. The Commission bears the ultimate responsibility for regulating the conduct of its employees, and we agree that it has a legitimate interest in maintaining the integrity, public confidence, and goodwill of its law enforcement officers. Moreover, it is not unreasonable for the Commission to be concerned that allowing perjured statements to go unpunished could have a detrimental impact on its ability to successfully prosecute

18

cases, especially since the Commission's *Brady*[2] obligations require it to disclose impeachment information related to its testifying officers. Thus, we find the state proceeding constitutes an attempt by the Commission to vindicate important state interests.

Finally, we conclude that the state proceeding offered an adequate opportunity for Gonzalez to raise his constitutional claims. Gonzalez disputes this point, arguing that no such opportunity was afforded in light of the ALJ's explicit refusal to entertain his federal challenges. We do not doubt that Gonzalez is disappointed the ALJ refused to consider whether the Commission violated his constitutional rights. But his window of opportunity to raise these claims is not yet closed, as he is permitted to—and indeed has—raised his federal claims in his appeal to the New Jersey Superior Court, Appellate Division.

The Supreme Court has, on multiple occasions, affirmed decisions to abstain notwithstanding the state agency's refusal or inability to consider federal challenges in the initial administrative proceeding—at least where those challenges may be presented on appeal to the state court. *See, e.g.*, *Middlesex*, 457 U.S. at 435–36 (applying *Younger* despite the state bar ethics committee's refusal to entertain the federal plaintiff's

---

[2]      *Brady v. Maryland*, 373 U.S. 83 (1963).

19

constitutional challenges because those challenges were available for consideration on review to the New Jersey Supreme Court); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629 (1986) (acknowledging plaintiff's argument that Ohio law does not allow the Commission to consider the constitutionality of the challenged statute and stating: "In any event, it is sufficient under *Middlesex* that constitutional claims may be raised in state-court judicial review of the administrative proceeding."). Our Court has recognized this concept as well. *Zahl v. Harper*, 282 F.3d 204, 210 (3d Cir. 2002) ("This Court has noted that the third part of the [*Middlesex*] test 'is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination.'") (citation omitted).

In determining whether a federal plaintiff has an adequate opportunity to raise his constitutional claims during state-court judicial review of the administrative decision, we ask whether "state law *clearly bars* the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 425–26 (1979) (emphasis added). In making this determination, we consider whether state law raises procedural barriers to the presentation of the federal challenges. *See id.* at 430 ("In sum, the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims,

20

and Texas law appears to raise no procedural barriers."); *id.* at 432 ("[T]he appellees have not shown that state procedural law barred presentation of their claims—in fact Texas law seems clearly to the contrary.").

Gonzalez has not suggested any reason for us to believe the New Jersey courts are procedurally barred from considering his federal challenges during their review of the Commission's termination decision. In fact, it appears the New Jersey courts have repeatedly recognized their authority to consider constitutional challenges during appellate review of administrative determinations. The New Jersey Superior Court, Appellate Division had this to say: "[A]lthough our role in reviewing the actions of administrative agencies is limited, we are clearly empowered to determine whether an agency's decision offends the State or Federal Constitution." *In re Disciplinary Action Against Gonzalez*, 964 A.2d 811, 817 (N.J. Super. Ct. App. Div. 2009) (citing *George Harms Const. Co. v. Tpk. Auth.*, 644 A.2d 76 (N.J. 1994); *Campbell v. Dep't. of Civil Serv.*, 189 A.2d 712 (N.J. 1963)). As the appellant in the case just cited, Gonzalez should be well acquainted with the New Jersey courts' authority to review his federal claims.

V.

In light of the quasi-criminal nature of Gonzalez's administrative hearing and our finding that the *Middlesex*

21

conditions have been satisfied, we conclude that the District Court correctly abstained from adjudicating Gonzalez's claims. Accordingly, we will affirm.