**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3471
_____

SIXTH ANGEL SHEPHERD RESCUE, INC.;
SAMANTHA KENNEY; TERRY SILVA,

                                                                  Appellants
                                    v.

JAMES SCHILIRO; GEORGE WINDSOR; BOROUGH OF MARCUS HOOK;
PENNSYLVANIA SPCA; GEORGE BENGAL; ELIZABETH ANDERSON;
GREGORY JORDAN, SPCA OFFICERS 1 AND 2
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-13-cv-02098)
District Judge: Honorable Ronald L. Buckwalter
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 8, 2014
_____

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit Judges*

(Filed: January 9, 2015)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

VANASKIE, *Circuit Judge*.

Appellants Sixth Angel Shepherd Rescue, Inc., Terry Silva, and Samantha Kenney appeal the District Court's dismissal of their civil rights action which arose out of a search and ensuing prosecution of Ms. Silva.[1]  Appellants sought to stay the prosecution and recover monetary relief.  The District Court dismissed all of Appellants' claims without prejudice, and Appellants now challenge only the refusal to grant injunctive relief.  We find that under the standard articulated in *Younger v. Harris*, 401 U.S. 37 (1971), the District Court properly abstained from adjudicating Appellants' claims.

## I.

Silva served as President of a company that owned buildings at 13 and 15 West Tenth Street in Marcus Hook, Pennsylvania.  She had a law office in the 15 West Tenth Street building.  On February 22, 2013, Pennsylvania SPCA (PSPCA) personnel and James Schiliro[2]—the mayor and health code officer of the Borough of Marcus Hook— executed search warrants at both buildings.  Inside, they found:

> Excessive animal feces smeared across the ground of the first floor.  There were two dogs loose in a first floor room that were confined to areas where excessive feces were smeared across the ground . . . there was an overpowering odor of animal feces and urine . . . [there was] a shepherd mix breed dog in a broken wire cage in the rear room that contained

[1] Sixth Angel Shepherd, Inc., is a non-profit allegedly devoted to the care of German Shepherds and German Shepherd mixes.  Silva, a licensed attorney, is a former board member of Sixth Angel Shepherd.  Kenney appears to be the Secretary of Sixth Angel Shepherd.

[2] The case caption previously misspelled "Schiliro" as "Schilero."

excessive amount of feces smeared across the floor. There was excessive urine in the dog's crate . . . there were four german shepherd mixed breed dogs that were confined to cages on the second floor . . . [with] additional dogs heard behind the doors of rooms on the second floor.

(App. 283.) PSPCA officials removed 28 dogs from the buildings, and charged Silva with dozens of counts of cruelty to animals and local ordinance violations.

Appellants claim that the search warrant and state prosecution targeting Silva constitute a malicious effort by her adversaries—the PSPCA and the Mayor of Marcus Hook—to pervert the mechanisms of government and punish an irksome attorney. Hours before the search of her offices, Silva had been in court arguing for sanctions against the Borough of Marcus Hook in a municipal enforcement dispute unrelated to this case. And in 2010, Silva and Sixth Angel Shepherd had successfully sued the PSPCA and two of its employees after the PSPCA retained three dogs seized from Silva by the Pennsylvania Bureau of Dog Law Enforcement.

Silva was entitled to attorney's fees in the 2010 case against the PSPCA, and her fee petition was still pending when PSPCA personnel searched her law offices on February 22, 2013. During the raid, the PSPCA seized Silva's primary work computer, which Appellants claim contained the records Silva needed to complete her outstanding fee petition and also contained privileged legal files related to the suit against the PSPCA. Moreover, at Silva's trial on ordinance violations and animal cruelty charges, her prosecutor was Elizabeth Anderson, the losing attorney in Silva's 2010 suit against the PSPCA.

3

According to Appellants, these facts show that the PSPCA and the Borough of Marcus Hook unconstitutionally harassed and prosecuted Silva because she zealously opposed them in court. Thus, Appellants seek to have a federal court interpose itself between Silva and the Commonwealth of Pennsylvania.

In April of 2013, two months after the search, Appellants filed a lengthy complaint in the United States District Court for the Eastern District of Pennsylvania seeking damages and injunctive relief, including a stay of the state court criminal proceedings. In June of that year, Appellees moved to dismiss, citing the Supreme Court's *Younger* decision. The District Court held a hearing on the motions, at which it properly noted the requisite deference to state proceedings, and on July 11, 2013 dismissed the complaint "without prejudice to plaintiffs' filing an amended complaint in compliance with the pleading standards of Fed.R.Civ.P. 8 at the conclusion of those proceedings when all state remedies have been exhausted, if necessary." (App. 231.)

On July 23, 2013, Silva was convicted by a Pennsylvania Magisterial District Court of dozens of counts. She appealed that decision, and her state court trial *de novo* is pending. This federal appeal seeks to have the state court proceedings enjoined.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). We have subject matter jurisdiction under 28 U.S.C. § 1291, and exercise plenary review over the District Court's abstention determination. *See ACRA Turf Club, LLC v. Zanzuccki,* 748 F.3d 127, 132 (3d Cir. 2014).

4

III.

We consider first whether the District Court properly abstained given pending state criminal proceedings, and second whether bad faith prosecution or other extraordinary circumstances augur against abstention.

A.

As a matter of both equity and comity, federal courts loathe interfering with pending state proceedings. *See Coruzzi v. New Jersey,* 705 F.2d 688, 690 (3d Cir. 1983). This is especially true for state criminal cases, which we presume allow a defendant to invoke federal constitutional protections. *See Kugler v. Helfant*, 421 U.S. 117, 124 (1975); *Evans v. Court of Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992).

We have held repeatedly that *Younger* abstention is appropriate where an ongoing state proceeding "(1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 181 (3d Cir. 2014) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)). Appellants do not dispute the judicial nature of the state proceedings, nor Pennsylvania's compelling interest in enforcing its criminal laws. Rather, they argue that the magisterial district judge did not consider Silva's federal constitutional claims, and that Pennsylvania's remedy of a trial *de novo* before the Court of Common Pleas "hardly suffices for protections." Appellants' Br. at 28.

5

We begin from the assumption that state and federal courts are equally competent in evaluating federal constitutional claims. *See Lui v. Comm'n, Adult Entm't, Del.*, 369 F.3d 319, 326 (3d Cir. 2004). Federal courts thus presume that state courts provide an adequate forum for federal constitutional claims, and refrain from interfering with state proceedings unless some procedural barrier clearly bars litigants from availing themselves of federal constitutional protections. *See Gonzalez*, 755 F.3d at 184 (quoting *Moore v. Sims,* 442 U.S. 415, 425-26 (1979)); *O'Neill v. City of Phila.*, 32 F.3d 785, 790 (3d Cir. 1994) (quoting *N.O. Pub. Serv., Inc. v. Council of City of N.O.,* 491 U.S. 350, 369 (1989)). Even when a state administrative law judge refuses to consider federal constitutional claims, we have nonetheless required abstention when a litigant may raise those claims on appeal in state court. *See Gonzalez*, 755 F.3d at 183-84 (collecting cases).

Against this precedent we cannot find that Pennsylvania's court system fails to provide an adequate opportunity to raise federal constitutional claims when Silva's *de novo* appeal is pending in the Court of Common Pleas. *See Commonwealth v. Silva*, Ct. Com. Pl., Delaware County, NO. 23-SA-0000869-2013. To do so would impugn Pennsylvania's competence to adjudicate federal claims, and risk condemning the very structure of the Commonwealth's court system.

A recitation of the claims asserted in this matter demonstrates their inextricable entanglement with the pending prosecution.

Appellants assert, *inter alia*, that Schiliro's administrative search warrant impermissibly relied on a confidential informant; Schiliro predicated his warrant on falsified evidence and failed to notify the magistrate that the search implicated privileged legal materials; Silva was denied her right to consent to the search before the warrants issued; the prosecution of Silva constitutes retaliation for protected First Amendment speech; the magistrate judge who heard Silva's case failed to recuse himself, failed to allow Silva to subpoena witnesses, and failed to ensure Silva had access to evidence under *Brady v. Maryland*, 373 U.S. 83 (1963); Elizabeth Anderson, who prosecuted Silva, appeared improperly because she was also opposing counsel in Silva's active civil case against the PSPCA; and the procedural safeguards in Pennsylvania's judicial system are inadequate to safeguard constitutional rights. *Younger* deference precludes federal courts from slashing into such a thicket of federal claims interwoven into a pending criminal prosecution.

B.

Even when this Court would otherwise abstain under *Younger*, federal action is proper "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction" or "in other extraordinary circumstances where irreparable injury can be shown[.]" *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *see also Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965); *Gonzalez*, 755 F.3d at 184; *Anthony v. Council*, 316 F.3d 412, 417-18 (3d Cir. 2003). Appellants claim that Silva's prosecution in state court is a malicious prosecution, brought in bad faith,

7

constitutes selective enforcement, retaliates for her protected First Amendment activities, and serves the prosecutor's private interests rather than the public good. These claims fail for two reasons. First, Silva has not exhausted her state appeals, and "even a claim of prosecutorial vindictiveness will not suffice to overcome the general principle that federal review of a criminal prosecution is unavailable before the state proceeding is completed." *Evans*, 959 F.2d at 1234.[3] Second, Appellants cannot possibly show that Silva's prosecutors lacked hope of obtaining a valid conviction, because they succeeded in convicting her at trial. *Cf. Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) ("[A] malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused.").

Nor is this an extraordinary circumstance in which Appellants can show irreparable injury. The Third Circuit has read "extraordinary circumstances" to include "prosecution brought under a statute flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Williams v. Red Bank Bd. of Ed.*, 662 F.2d 1008, 1022 n.14 (3d Cir. 1981) (quotation marks and citations

---

[3] Appellants cite a Fifth Circuit case from 1981 for the proposition that even when a prosecution has a chance of success on the merits, a court may still find bad faith in its institution. But the case's extreme facts sap its persuasive power: the District Court in that case had concluded that the appellees' prosecution "was brought in bad faith for purposes of harassment" and "would not have been brought but for the improper influence exerted on the prosecutor by certain DeKalb judges to seek the indictments." *Fitzgerald v. Peek*, 636 F.2d 943, 944-45 (5th Cir. 1981).

8

omitted), *overruled on other grounds by Schall v. Joyce*, 885 F.2d 101, 108 (3d Cir. 1989). Appellants concede that they do not rely on this argument. But even were this Court to read "extraordinary circumstances" more broadly, Silva has state remedies available, and waiting for the state to hear one's case is not a cognizable irreparable injury under *Younger*. *See Lui*, 369 F.3d at 327.

## IV.

For the foregoing reasons, we will affirm the District Court's dismissal of Appellants' civil rights action.