UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

_____

Nos. 91-2341 and 91-2821

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

JOSE LUIS VASQUEZ-RODRIGUEZ

Defendant-Appellant

_____

Appeals from the United States District Court
for the Southern District of Texas

_____

(November 19, 1992)

Before JONES and WIENER, Circuit Judges, and LITTLE, District
Judge.[*]

LITTLE, District Judge:

Relying on a double jeopardy defense, Jose Luis Vasquez-
Rodriguez asks this court to reverse his conviction for conspiracy
to possess, with intent to distribute, more than five kilograms of
cocaine. Finding the appellant's challenge baseless, we affirm the
conviction.

_____

[*] Judge F. A. Little, Jr., U. S. District Judge, Western District of
Louisiana, sitting by designation.

BACKGROUND

Vasquez was charged, tried and convicted of (1) possession with intent to distribute heroin and (2) conspiracy to possess heroin with intent to distribute. The heroin based counts were tried in federal court in the Southern District of Texas in January 1991.

In April of the same year, Vasquez was tried and convicted in federal court in the Southern District of Texas of conspiracy to possess cocaine with intent to distribute. Vasquez claims that he was involved in only one conspiracy and that agreement had as its centerpiece distribution of cocaine and heroin. Thus, the conviction at the second trial should be nullified by application of the constitutional protection against double jeopardy.

We review the experiences of defendant Vasquez beginning with his acquaintance with Candelario Leon in the summer of 1990. The introduction of Leon to Vasquez occurred in Reynosa, Mexico. Leon, a former drug dealer, was a confidential informant for, but not an employee of, the United States Drug Enforcement Administration.

Vasquez, a Mexican national without U. S. credentials of any sort, offered to sell or acquire any drugs that Leon desired. In fact, Vasquez hounded Leon to buy heroin from him. After each communication with Vasquez, Leon would report to his contact, Tony Santos, an agent with the Drug Enforcement Administration.

Leon told Vasquez that he had a buyer for heroin. Rodney Alverez, a DEA agent posing as a dealer in heroin, met Vasquez in

2

a lot between two restaurants on South Tenth Street in McAllen, Texas. The date of the meeting was 16 November 1990. Accompanying the defendant was Jose Zamarripa. The predicate for the meeting was the offer by Vasquez to Leon in Reynosa on the 15th that he had a quantity of heroin for sale. The appellant recounted the fact that there were 15 ounces of heroin for sale. Earlier in the day, while in Mexico, Zamarripa and the defendant had told Leon that they would sell a small sample, which they possessed, to Leon's contact. At 1:30 p.m. on the 16th, Leon and agent Rodney Alverez, met with Zamarripa in a parking lot on South Tenth Street in McAllen, Texas. Zamarripa agreed to sell 15 ounces of heroin to Alverez for $4,500 per ounce. Alverez contemplated the situation and agreed to buy a sample of the heroin for $200. Marked bills were given to Zamarripa. Alverez promised to communicate further with Zamarripa later in the day.

After Alverez departed with the sample, Leon and Zamarripa scoured the neighborhood to find the defendant. Vasquez had not attended the afternoon meeting, but was located, traveling on foot, in the area. Zamarripa told Vasquez that he gave, not sold, the sample to Alverez. With that news, Vasquez became miffed at Zamarripa and told him that the heroin was theirs. The sale should have been for $200 and the consideration should have been divided equally between Vasquez and Zamarripa.

Later the same day, Vasquez, Zamarripa, agents Alverez and Jose Aguilar and Leon met in the McAllen parking lot. The purpose

3

of the meeting was to perfect a purchase of a greater quantity of heroin. While Vasquez acted as a lookout, Zamarripa and agents Aguilar and Alvarez conferred in a parked automobile. Zamarripa presented the large quantity of heroin for the two agents to inspect. Agent Aguilar signaled for support, agents appeared, and Zamarripa and Vasquez were arrested. The heroin experience resulted in a guilty verdict in January of 1991.

The April trial had as its hub a cocaine transaction. As we previously reported, Leon met defendant Vasquez in Reynosa, Mexico. Leon advised Santos that Vasquez had expressed an interest in selling heroin and buying cocaine. After describing Tony Santos as a Colombian cocaine dealer, Leon arranged a meeting between Santos and Vasquez on 17 October 1990. The meeting was held in leased office space in Unit C of the Professional Plaza, 4311 North Tenth Street in McAllen, Texas.

When defendant arrived, he was accompanied by Ramiro Tijerina. Tijerina described clients from Houston who desired to purchase significant quantities of cocaine. Vasquez served as a mediator. If the principals foundered over a point, Vasquez negotiated their differences by suggesting alternative procedures so that the bartering would continue, not terminate. Tijerina offered to purchase 1,000 kilograms of cocaine. Agent Santos stated that he could not deliver that quantity of cocaine but that his source of supply could accommodate such an order. Vasquez's compensation for

services was discussed, but no agreement was reached in that regard.

The following day another meeting was held at the same place. Present were Ramiro Tijerina, his son Ramiro, Jr., Santos, and Vasquez. Tijerina pushed Santos for a 150 kilogram purchase but Santos declined. Santos claimed that his source had made a big sale leaving no inventory to satisfy the demands of others. Tijerina was deflated and advised Santos that when his source had been replenished to contact him through Vasquez.

A third meeting was held on 25 October 1990 at Unit C of the Professional Plaza. Tijerina, Jr. appeared as did Vasquez, Leon, and Santos. Unlike the last meeting, this time it was the purchasers who refused Santos' cocaine. Feigning displeasure, Santos departed, followed by Vasquez. Vasquez kept assuring Santos that Tijerina was big time and that Santos would have other opportunities to sell them cocaine.

Another meeting was scheduled for 26 October. Here again, the site was Unit C of the Professional Plaza. Both Tijerinas appeared, as did Vasquez, Joel Cavazos (a potential purchaser from Houston, Texas), Leon, and Santos. Prior to the meeting, Vasquez had mentioned privately to Santos that he needed money and that if the planned drug sale did not materialize Vasquez would find other purchasers for Santos' cocaine.

At the plenary meeting, Vasquez suggested that Santos sell a cocaine sample to Tijerina. The quality of the Santos stuff could

5

be determined as a harbinger of quality to follow in larger deliveries. Santos surrendered a sample to Tijerina and quoted a $2,000 per kilogram price, delivered in Houston, Texas. Tijerina indicated a desire to purchase 1,000 kilograms and promised a definite response after chemical analysis of the sample. Vasquez was arrested on 16 November and Tijerina met a similar fate on 26 November. The jury found Vasquez guilty of conspiracy to possess with intent to distribute less than 5 kilograms of cocaine.

## ANALYSIS

We review de novo the district court's denial of a motion to dismiss the cocaine indictment (the April trial) on the ground of double jeopardy. United States v. Atkins, 834 F.2d 426 (5th Cir. 1987) overruled on other grounds, 933 F.2d 325 (5th Cir. 1991); United States v. Deshaw, 91-3131 Fifth Cir. 1992 at 339. The fifth amendment protects one against multiple prosecutions for the same offense. United States v. Felix, 112 S. Ct. 1377, 1382 (1992); see also United States v. Levy, 803 F.2d 1390, 1393 (5th Cir. 1986) (quoting Green v. United States, 355 U.S. 184, 187-88, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199 (1957)). Vasquez has been charged with conspiracy to possess heroin and conspiracy to possess cocaine.

It is implicit in the record that the district court felt that the defendant carried his burden of establishing a prima facie claim of double jeopardy. United States v. Levy, 803 F.2d at 1393. It is explicit in the district court's ruling that the government

6

demonstrated by a preponderance of the evidence that the cocaine indictment charged a crime separate and apart from that for which Vasquez was previously placed in jeopardy. When analyzing multiple conspiracy counts not bound in the same indictment we are guided, if not directed, by Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Blockburger instructs us to dismiss the cocaine indictment unless the government can prove by a preponderance of the evidence that the two conspiracies are factually distinct, i.e. the cocaine conspiracy indictment charges a crime separate from the heroin conspiracy indictment. In the Fifth Circuit, five factors are considered when determining the number of agreements. These factors, as established in United States v. Marable, 578 F.2d 151 (5th Cir. 1978) are: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. The acts as described in the indictment will be examined as well as the acts admitted into evidence at the trials or hearings. United States v. Deshaw at 347; United States v. Levy, 803 F.2d at 1395. The following graphic display compels us to conclude that there are two conspiracies.

7

|  | Heroin Transaction | Cocaine Transaction |
|---|---|---|
| Time | 16 November 1990 | 17 October 1990<br>18 October 1990<br>25 October 1990<br>26 October 1990 |
| Persons acting as co-conspirators | Jose Luis Vasquez-Rodriquez<br>Jose Zamarripa<br>Jose Aguilar, DEA Agent<br>Rodney Alverez, DEA Agent<br>Candelario Leon, Confidential Informant | Jose Luis Vasquez-Rodriquez<br>Ramiro Tijerina<br>Ramiro Tijerina, Jr.<br>Joel Cavazos<br>Tony Santos, DEA Agent<br>Candelario Leon, Confidential Informant |
| Statutory Offenses | 21 U.S.C. § 846<br>21 U.S.C. § 841(a)(1) and (b)(1)(B) | 21 U.S.C. § 846<br>21 U.S.C. § 841(a)(1) and (b)(1)(B) |
| Overt Acts | Offer to sell large quantity of heroin, possession of a large quantity of heroin | Offer to purchase a large quantity of cocaine |
| Places Where Acts Occurred | Parking lot, South Tenth Street, McAllen, Texas | Office on 4311 North Tenth Street, McAllen, Texas |

The government has clearly proved the existence of two separate conspiracies. The time period of each event is clearly different. The persons acting as co-conspirators are not the same. In the heroin transaction, the defendant conspired with Jose Zamarripa to possess and sell a proscribed substance. Weeks before, the defendant conspired with Tijerina, Tijerina, Jr., and Cavazos to purchase cocaine. It is true that the same statutes are used by the government in both conspiracies, but the statutes are not invoked to regulate identical conduct. To the contrary, the

8

statutes are applied to two events, neither of which is involved with the other.  The times are not the same, the parties are not the same, and the objects of the conspiracies are not the same.[1] Nothing links the two transactions other than the defendant.  There is no evidence that the conspirators in one transaction knew the conspirators in the other transaction.  In one case an illegal sale was planned and in the other, the parties considered an illegal purchase.  Both conspiracies were conducted in McAllen, Texas, but one was confined to a parking lot on South Tenth Street and the other to an office on North Tenth Street.  Comparing the facts in the record against the five Marable factors, we are persuaded that the government has proved the existence of two separate conspiracies.

---

[1] This clearly is not a case of a single agreement to sell two different drugs.  If it were, Vasquez might have a valid defense of double jeopardy. In United States v. Winship, 724 F.2d 1116 (5th Cir. 1984), this court deduced:

> The double jeopardy prohibition would not allow separate public drunkenness convictions for a man who drank enough of two whiskies to be drunk on either liquor.  Public drunkenness laws do not inquire whether the violators consumed Old Crow or Chivas Regal. Similarly, whether the government may bring separate Section 846 charges does not hinge on whether separate controlled substances were involved.  In this case, analysis of the Marable factors provides objective indications of a single agreement.  Furthermore, the conspiracy was clearly not departmentalized or compartmentalized in the minds of the conspirators.  One conspirator's testimony emphasized the close links between efforts to sell the two drugs. Jack Goudeau could not recall whether he was buying marijuana or methamphetamine when he first met appellant Winship  (citation omitted).  We see no logic or reason to dichotomize the conspiracy here.  This criminal blend came from a single agreement to sell two drugs.  We cannot allow the government to distill separate offenses from that agreement by prosecuting for each kind of drug.  Counts I and II constituted a single offense.  Appellants' right not to be twice placed in jeopardy for the same offense was violated.

Id. at 1127.

9

We AFFIRM the district court's denial of the defendant's motion to dismiss on the grounds of double jeopardy.