**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1791
_____

ALTICE USA, INC.

v.

NEW JERSEY BOARD OF PUBLIC UTILITIES;
JOSEPH FIORDALISO,
in his official capacity as President of the New Jersey Board
of Public Utilities; COMMISSIONER MARY-ANNA
HOLDEN; DIANE SOLOMON;
UPENDRA J. CHIVUKULA; BOB M. GORDON,
Appellants
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-19-cv-21371)
U.S. District Judge: Honorable Brian R. Martinotti
_____

Argued January 27, 2022
_____

Before: HARDIMAN, SHWARTZ, and SMITH, <u>Circuit
Judges</u>.

(Filed: February 24, 2022)

_____

Alec Schierenbeck [ARGUED]
Meliha Arnautovic
Office of Attorney General of New Jersey
Division of Law
7th Fl, West Wing
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

        Counsel for Appellants

Matthew Hellman [ARGUED]
Howard J. Symons
Jenner & Block
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001

Thomas N. Gamarello
Jeffrey T. LaRosa
Schenck Price Smith & King
220 Park Avenue
P.O. Box 991
Florham Park, NJ 07932

        Counsel for Appellee

_____

OPINION OF THE COURT

_____

SHWARTZ, Circuit Judge.

The New Jersey Board of Public Utilities ("BPU") ordered Altice USA, Inc. ("Altice"), a cable service provider, to prorate its bills for the month in which a cable customer cancels his service, as required by New Jersey law ("Proration Requirement"). Altice asserts that the Proration Requirement is preempted by the Cable Communications Policy Act of 1984 ("Cable Act"). The District Court agreed and granted Altice's motion for judgment on the pleadings, concluding that abstention under Younger v. Harris, 401 U.S. 37 (1971), was not warranted and that the Proration Requirement was preempted. Because the Younger ruling was incorrect, we will vacate and remand.

I

A

Under N.J.A.C. § 14:18-16.7, a cable television company may seek relief from, among other things, N.J.A.C. § 14:18-3.8(c)'s requirement that, "[u]nless otherwise provided for . . . , initial and final bills . . . be prorated as of the date of the initial establishment and final termination of service." See also N.J.A.C. § 14:18-3.8(a). Relief from the Proration Requirement may be granted "provided that the cable television company provides a sample bill to be utilized in lieu of compliance with [the] section." N.J.A.C. § 14:18-

3

16.7(a)(1).

In 2011, Cablevision petitioned the BPU for relief from N.J.A.C. § 14:18-3.8 and provided sample bills. The BPU accepted Cablevision's assertion that "its sample bill demonstrate[d] that the company [wa]s billing in a proper manner and show[ed] how [it] will prorate its bills pursuant to the requirements of this section," J.A. 123, and granted its request for relief.

In 2016, Altice received the BPU's approval to acquire Cablevision. As part of the approval, Altice agreed to

> abide by applicable customer service standards, performance standards, and service metrics as delineated under N.J.A.C. Title 14, including but not limited to Chapters 3, 10 and 18, and N.J.S.A. 48:5A, including, but not limited to, requirements related to billing practices and termination.

J.A. 144.

Despite this agreement, and unlike Cablevision, Altice chose not to prorate its monthly bills absent "extraordinary circumstances." J.A. 82 ¶ 2. As a result, "customers who . . . seek to cancel service continue to receive service and are billed through the end of their monthly billing cycle." J.A. 82 ¶ 2.

B

The BPU received numerous customer complaints about Altice's failure to prorate bills. N.J.S.A. § 48:5A-9

4

empowers the BPU to investigate complaints of alleged violations of the New Jersey Cable Television Act and render decisions necessary to enforce its terms. Pursuant to that authority, the BPU issued a Show Cause Order, directing Altice to explain why its failure to prorate its bills was not a violation of the order Cablevision obtained and the order approving the merger.

Altice filed an answer to the Show Cause Order, asserting that the Proration Requirement was preempted by federal law and that, in any event, it need not comply with the Proration Requirement based upon the relief Cablevision secured in 2011.

The BPU disagreed, found that Altice violated the Proration Requirement, and issued a cease and desist order that directed Altice to (1) prorate bills, (2) issue refunds to customers whose bills were not prorated, (3) pay $10,000 to the Altice Advantage Internet program, which "provide[s] low cost internet service" to eligible customers, and (4) conduct an audit to determine which customers were not given prorated bills and provide the BPU with the names and account numbers of those customers. J.A. 230–31. Altice then filed an appeal with the New Jersey Superior Court. See In re Altice USA, Inc., No. A-1269-19, 2021 WL 4808399 (N.J. Super. Ct. App. Div. Oct. 15, 2021), petition for cert. filed, No. 086408 (N.J. Nov. 23, 2021).

C

While its state court appeal was pending, Altice filed a complaint in the United States District Court for the District of New Jersey. In its amended complaint, Altice asserted that (1)

5

the Proration Requirement is preempted by the Cable Act; (2) enforcing the Proration Requirement deprives Altice of its rights under the Cable Act; (3) the BPU failed to obey Federal Communications Commission orders that determined Cablevision, and Altice by extension, is subject to effective competition; and (4) the BPU's actions violate New Jersey law.

The District Court granted Altice a preliminary injunction on federal preemption grounds alone, enjoining enforcement of the BPU's order. See Altice USA, Inc. v. N.J. Bd. of Pub. Utils., No. 3:19-CV-21371-BRM-ZNQ, 2020 WL 359398, at *1 (D.N.J. Jan. 22, 2020), reconsideration denied, 2020 WL 1151045 (D.N.J. Mar. 10, 2020). The Court concluded that (1) abstention under Younger was not warranted; and (2) Altice had shown, among other things, a likelihood of success in establishing that the Proration Requirement is a rate regulation preempted by the Cable Act. See id. at *6–8. The BPU appealed the preliminary injunction ruling but later withdrew that appeal.

After the District Court granted the preliminary injunction, Altice moved for judgment on the pleadings, and the BPU cross-moved to dismiss. The District Court granted Altice's motion and denied the BPU's cross-motion. See Altice USA, Inc. v. Fiordaliso, No. 3:19-CV-21371-BRM-ZNQ, 2021 WL 1138152 (D.N.J. Mar. 23, 2021). The District Court again declined to abstain under Younger, holding that the underlying proceeding was not "quasi-criminal" in nature and noting that the purported absence of a criminal analog was, in its view, dispositive. Id. at *2–3. As to the merits, the District Court held that the Proration Requirement was preempted as a rate regulation because it has "the effect of prescribing a daily rate for the service that was provided before

6

the cancellation," id. at *4 (quotation marks and citation omitted), and that the Cable Act's savings clauses "do not affect the Cable Act's express preemption over N.J.A.C. 14:18-3.8(c)," id. at *7.

The BPU appeals.

## II[1]

### A[2]

In general, "federal courts are obliged to decide cases within the scope of federal jurisdiction." Sprint Commc'ns,

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the Younger ruling and the order granting judgment on the pleadings under Rule 12(c) de novo. PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev., 978 F.3d 871, 881 n.11 (3d Cir. 2020), cert. denied sub nom. PDX N., Inc. v. Asaro-Angelo, 142 S. Ct. 69 (2021); In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II), 751 F.3d 150, 156 n.11 (3d Cir. 2014). In reviewing a Rule 12(c) motion, "we must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,' and we may not affirm the grant of such a motion 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" PDX N., 978 F.3d at 881 n.11 (quoting Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quotation marks omitted)).

[2] Altice claims that the BPU forfeited its Younger

Inc. v. Jacobs, 571 U.S. 69, 72 (2013). In certain limited circumstances, however, "the prospect of undue interference with state proceedings counsels against federal relief." Id. Under the Younger abstention doctrine, federal courts must refrain from interfering with three types of state proceedings: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 73. The BPU argues that the District Court should have abstained under Younger

---

argument by failing to raise it in its withdrawn appeal from the District Court's order granting Altice's motion for a preliminary injunction. In its motion for judgment on the pleadings, Altice informed the District Court that the BPU did not raise Younger in its withdrawn appeal, but it did not make a specific forfeiture argument. Cf. In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 262 (3d Cir. 2009) ("A fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal."). "Whether an argument remains fair game on appeal is determined by the degree of particularity with which it was raised in the trial court . . . and parties must do so with exacting specificity." Spireas v. Comm'r, 886 F.3d 315, 321 (3d Cir. 2018) (quotation marks and citations omitted). Accordingly, Altice forfeited its forfeiture argument, and "we will not reach a forfeited issue in civil cases absent truly 'exceptional circumstances.'" Barna v. Bd. of Sch. Dirs., 877 F.3d 136, 147 (3d Cir. 2017) (quoting Brown v. Philip Morris Inc., 250 F.3d 789, 799 (3d Cir. 2001)). In any event, a court may raise Younger abstention sua sponte. O'Neill v. City of Phila., 32 F.3d 785, 786 n.1 (3d Cir. 1994).

8

because the administrative proceeding before the BPU is a civil enforcement proceeding.

A "civil enforcement proceeding" warrants <u>Younger</u> abstention where the proceeding is "akin to a criminal prosecution" in "important respects." <u>Sprint</u>, 571 U.S. at 79 (quoting <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 604 (1975)). To determine if a civil enforcement proceeding is quasi-criminal in nature, courts may consider whether (1) "the action was commenced by the State in its sovereign capacity," (2) the action was "initiated to sanction the federal plaintiff for some wrongful act," (3) "there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges," and (4) "the State could have alternatively sought to enforce a parallel criminal statute." <u>ACRA Turf Club, LLC v. Zanzuccki</u>, 748 F.3d 127, 138 (3d Cir. 2014); <u>see also</u> <u>Sprint</u>, 571 U.S. at 79–80 (enumerating the first three factors). If these considerations demonstrate that the civil proceeding is quasi-criminal in nature, then we consider whether abstention is warranted under the factors set forth in <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423 (1982). <u>PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.</u>, 978 F.3d 871, 883 (3d Cir. 2020), <u>cert. denied sub nom.</u> <u>PDX N., Inc. v. Asaro-Angelo</u>, 142 S. Ct. 69 (2021). We will first examine whether the BPU Show Cause proceeding is a civil enforcement proceeding.

B

The BPU, a New Jersey regulatory agency, initiated the administrative action in its sovereign capacity. <u>See</u> <u>In re RCN of NY</u>, 892 A.2d 636, 637, 640 (N.J. 2006). The proceeding

9

began when the BPU issued a Show Cause Order pursuant to its authority under "the Cable Television Act and the BPU's implementing rules and regulations." J.A. 95 ¶ 46. Thus, the BPU commenced the action against Altice by filing a formal complaint—the Show Cause Order—and did so in its sovereign capacity.

We disagree with Altice's assertion that the Show Cause Order was an extension of Cablevision's 2011 petition for relief from certain provisions of the New Jersey Administrative Code. The Cablevision proceeding concluded in 2011 and the record does not show that either party sought to reopen it. Further, although Altice views the BPU's action as modifying the 2011 order, the record shows that the BPU used the Show Cause Order to start a new proceeding based on recent customer complaints about Altice's conduct, and it assigned the matter a new name and docket number, examined complaints about that conduct, and granted relief that did not impact the 2011 order Cablevision secured based on its prorated bills. Accordingly, the BPU commenced a proceeding in its sovereign capacity that had attributes similar to the filing of formal charges.

The action was also initiated to sanction the federal plaintiff for a wrongful act. The failure to prorate bills is wrongful conduct because it violates duly promulgated BPU regulations. A violation of the Cable Television Act, or any rule, regulation, or order promulgated under it, carries the possibility of an injunction and "penalt[ies]" of up to $10,000 "for a third and every subsequent offense." N.J.S.A. § 48:5A-51(b)–(c). "Penalties are, by their very nature, retributive: a sanction for wrongful conduct," PDX N., 978 F.3d at 884, and the BPU imposed penalties here. Among other things, the

10

BPU ordered Altice to cease its non-proration practice. Cease and desist orders qualify as sanctions that support Younger abstention. See Minn. Living Assistance, Inc. v. Peterson, 899 F.3d 548, 553 (8th Cir. 2018). The BPU also assessed a $10,000 penalty. Altice asserts that this $10,000 penalty was not a sanction for Younger purposes because the BPU directed that the fine go towards Altice's Advantage Program, but how the government chooses to allocate the proceeds of a fine does not change its character as a sanction. See also PDX N., 978 F.3d at 884 (holding that monetary penalties constitute sanctions even when they are directed to a special government fund). Accordingly, the BPU's directives for noncompliance with the Proration Requirement go beyond "incentiv[es]" to comply, or mere "negative consequences," ACRA Turf Club, LLC, 748 F.3d at 140 (emphasis omitted), and instead constitute penalties for Younger purposes. We therefore conclude that the action was initiated to—and did—sanction the federal plaintiff, Altice, for a wrongful act.

The Show Cause Order and sanctions followed an investigation into customer complaints. See Minn. Living Assistance, Inc., 899 F.3d at 552–53 (concluding an "underlying proceeding [bore] the first and third characteristics of a civil proceeding akin to a criminal prosecution" "even though the investigation was triggered by an employee complaint" (citing Ohio Civ. Rts. Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 623–24 (1986))). The BPU is empowered to investigate violations of the Cable Television Act. See N.J.S.A. § 48:5A-9 ("The [B]oard . . . shall have full right, power, authority and jurisdiction to: . . . (c) institute all . . . investigations . . . necessary to enforce the provisions of [the Cable Television Act], [and] of the rules and regulations adopted thereunder[.]"). In response to more than 100

11

complaints concerning Altice's billing practices, the BPU examined those practices, reviewed documents, and spoke with Altice representatives.  Based upon this information, the BPU found that Altice violated New Jersey law and imposed sanctions.

Finally, the lack of a criminal analog is not a prerequisite to Younger abstention.  See, e.g., Sirva Relocation, LLC v. Richie, 794 F.3d 185, 194 (1st Cir. 2015).  Indeed, the Supreme Court has sustained Younger abstention in cases where no criminal analog existed.  See Ohio Civ. Rts. Comm'n, 477 U.S. at 627–28 (civil rights proceeding regarding workplace sex discrimination); Middlesex Cnty. Ethics Comm., 457 U.S. at 428–29 (attorney disciplinary hearing).

Even if a criminal analog were required, however, New Jersey law criminalizes some violations of the Cable Television Act.  See ACRA Turf Club, LLC, 748 F.3d at 139 (considering whether "the policies implicated in the state proceeding could have been vindicated through enforcement of a parallel criminal statute").  Under N.J.S.A. § 48:5A-51(a), "any person" who "knowingly violate[s]" the Cable Television Act "is guilty of a misdemeanor."  The Cable Television Act provides that every cable company "shall obey and comply with every rule and regulation and order adopted or issued by" the Director of the Office of Cable Television.  N.J.S.A. § 48:5A-36(c).  One such regulation is the Proration Requirement.  N.J.A.C. § 14:18-3.8.  Moreover, N.J.S.A. § 48:5A-39 forbids cable companies from "adopt[ing], maintain[ing,] or enfor[ing] . . . [a] practice . . . which shall be unjust, unreasonable, . . . or otherwise in violation of law."  Cf. N.J.S.A. § 48:5A-11a(a) (requiring the Director to promulgate

12

rules and regulations regarding prorated credits or rebates during certain outages). Thus, if a cable company violates provisions of the Cable Television Act, it may be subject to prosecution, which is enough to show that there is a criminal analog to the civil proceeding here. See PDX N., 978 F.3d at 884; Minn. Living Assistance, Inc., 899 F.3d at 553 (rejecting the contention that no criminal analog existed where the Minnesota Fair Labor Standards Act "provide[d] for criminal penalties in addition to . . . civil penalties").

Altice's assertion that the state authorities could not have proven Altice violated a criminal statute is irrelevant. "[T]he question is not whether the current action is criminal or whether criminal charges are warranted." PDX N., 978 F.3d at 884. The relevant "question is whether there is a criminal analog." Id. A court need not evaluate the evidence and decide whether a criminal case against the party would succeed. See Bristol-Myers Squibb Co. v. Connors, 979 F.3d 732, 737–38 (9th Cir. 2020) ("[W]hen evaluating whether the characteristics of actions entitled to Younger abstention are present, the Supreme Court has considered the nature of a State's interest in different classes of proceedings, not its interest in specific cases."). We therefore conclude that, while a criminal analog is not required, one does exist here.

For these reasons, the BPU's civil enforcement proceeding was quasi-criminal in nature and, thus, the type of proceeding to which Younger applies.

C

To determine whether the District Court should have abstained pursuant to Younger, we next examine the

13

Middlesex factors. See PDX N., 978 F.3d at 883. We will therefore now consider whether: (1) there are "ongoing . . . judicial proceeding[s];" (2) the "proceedings implicate important state interests;" and (3) the party against whom abstention is asserted has "an adequate opportunity in the state proceeding[] to raise constitutional challenges." Middlesex, 457 U.S. at 432. Each factor supports Younger abstention here.

First, the proceeding was judicial in nature and ongoing when the federal complaint was filed. "[P]roceedings may be judicial in nature if," for example, judicial review is available, "they are initiated by a complaint, adjudicative in nature, governed by court rules or rules of procedure, or employ legal burdens of proof." Kendall v. Russell, 572 F.3d 126, 131 (3d Cir. 2009).[3] Here, the BPU initiated proceedings with the Show Cause Order; Altice answered; the New Jersey Rate Counsel responded; the BPU considered evidence, made factual determinations and ordered relief; and the BPU's "ultimate decision . . . [was then] appealed to an undeniably judicial forum—the New Jersey Superior Court, Appellate Division." Gonzalez v. Waterfront Comm'n of N.Y. Harbor, 755 F.3d 176, 183 (3d Cir. 2014); see also N.J.A.C. § 14:18-16.8 (listing procedures to be followed in enforcement actions); N.J.S.A. § 48:5A-51(b)-(c) (noting procedures when

---

[3] "[W]hen confronted with administrative matters appealable to the state courts, '[w]e will assume . . . that an administrative adjudication and the subsequent state court's review of it count as a unitary process' for Younger purposes." Gonzalez v. Waterfront Comm'n of N.Y. Harbor, 755 F.3d 176, 183 (3d Cir. 2014) (alteration in original) (quoting Sprint, 571 U.S. at 78).

14

BPU seeks an injunction or a penalty). Moreover, the state court appeal was pending when Altice filed its federal complaint. "'[S]tate proceedings are ongoing for Younger abstention purposes' . . . if the state proceeding 'was pending at the time [the plaintiff] filed its initial complaint in federal court.'" PDX N., 978 F.3d at 885 (second alteration in original) (quoting Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408–09 (3d Cir. 2005)). Altice was, therefore, subject to an ongoing judicial proceeding when it filed its federal complaint.

Second, the proceeding here implicates important state interests. Altice does not dispute that the state has an important interest in ensuring compliance with the Cable Television Act, particularly its consumer-oriented provisions. See, e.g., New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 365 (1989) ("[W]hen we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the outcome of the particular case . . . . , [r]ather, what we look to is the importance of the generic proceedings to the State.").

Third, Altice has an adequate opportunity to raise its federal claims in the state proceeding. See, e.g., Gonzalez, 755 F.3d at 184 (concluding that the ability to appeal an Administrative Law Judge determination to the New Jersey Superior Court, Appellate Division, was sufficient for Younger purposes). In fact, Altice raised with the Appellate Division its assertion that the Proration Requirement is preempted by the Cable Act. In re Altice USA, Inc., 2021 WL 4808399, at *2.

Because the Middlesex factors support abstaining in favor of the quasi-criminal proceeding, we will abstain.

15

## III

For the foregoing reasons, we will vacate the District Court's order and remand for it to dismiss the amended complaint.