NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 21-1035

---

DAVID M. GRECO,
Appellant

v.

ANDREW J. BRUCK, New Jersey Attorney General; JARED M. MAPLES, Director, New Jersey Office of Homeland Security and Preparedness; NEW JERSEY OFFICE OF HOMELAND SECURITY AND PREPAREDNESS, a Cabinet Level Department of the State of New Jersey; CAMDEN COUNTY PROSECUTOR'S OFFICE, a municipal entity of the State of New Jersey; JILL S. MAYER, Acting Camden County Prosecutor; NEVAN SOUMAILS, Assistant Camden County Prosecutor; GLOUCESTER TOWNSHIP POLICE DEPARTMENT, a municipal entity of the State of New Jersey; BERNARD JOHN DOUGHERTY, Detective, Gloucester Township Police Department; NICHOLAS C. AUMENDO, Patrolman, Gloucester Township Police Department; DONALD B. GANSKY, Detective Sergeant, Gloucester Township Police Department; WILLIAM DANIEL RAPP, Detective, Gloucester Township Police Department; BRIAN ANTHONY TURCHI, Patrolman, Gloucester Township Police Department; JOHN DOE #1, (a fictitious name); and JOHN DOE 2-10 (fictitious names)

---

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 3-19-cv-19145)
District Judge: Honorable Brian R. Martinotti

---

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 29, 2021

---

Before: GREENAWAY, JR., KRAUSE, and PHIPPS, *Circuit Judges*.

(Filed: May 13, 2022)

OPINION[*]

PHIPPS, *Circuit Judge*.

This case involves an instance when, under *Younger v. Harris*, 401 U.S. 37 (1971), a federal court must refrain from hearing a case properly within its limited jurisdiction. David Greco filed this suit in federal court during the pendency of a concurrent state-court civil enforcement action initiated by a New Jersey law enforcement agency. The District Court determined that the state-court proceedings satisfied the criteria for *Younger* abstention and dismissed this federal case on that basis. We will affirm that order for the reasons below.

I.

The state-court proceedings relevant to this case arose under New Jersey's red-flag law, the Extreme Risk Protective Order Act of 2018. That law, the ERPO Act, took effect on September 1, 2019, and it authorizes certain persons, including law enforcement officers, to seek a court order and a search warrant to temporarily remove lawfully owned firearms from persons who pose an immediate and present danger to others. *See* N.J. Stat. Ann. §§ 2C:58-23, 26; *see also* 2018 N.J. Sess. Law Serv. Ch. 35 § 17 (West) (setting the effective date for the Act and permitting "the Attorney General and the Administrative Director of the Courts [to] take any anticipatory action as shall be

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

necessary to effectuate the purposes of this act"). After investigating David Greco for several months beforehand, on September 5, 2019, the New Jersey Office of Homeland Security and Preparedness, known as 'OHSP,' sought a temporary order against Greco under the ERPO Act. In its petition to a state court in Camden County, OHSP provided several reasons for its request. Greco had displayed a pattern of antisemitic social media activity; he contacted the Pittsburgh synagogue shooter before the mass shooting in October 2018; he believed that "force or violence is necessary to realign society"; and he "frequently mentioned his disdain[] for the Jewish Talmud" as well as his belief "that Jews are raping our women and children." Petition for Temp. Extreme Risk Protective Ord. (App. 114). On those facts, OHSP argued that Greco posed "an immediate and present danger" to others by owning or possessing firearms. *Id.*

The next day, the New Jersey state court held an *ex parte* hearing and granted the petition. The court determined that Greco posed an immediate and present danger, and it then issued the temporary order and a 'no knock' search warrant for a handgun, a rifle, and "any other unregistered weapons, ammunition, and/or shotguns" at Greco's residence. Temp. Extreme Risk Protective Ord. (App. 120). Later that day, local law enforcement officers executed the search warrant and temporarily seized Greco's New Jersey Firearms Purchaser ID Card, rifle, and ammunition for that rifle.

That seizure has not exactly been temporary – OHSP still has possession of Greco's rifle and ammunition. But through a series of uncontested state-court procedural rulings, Greco has contributed to the continued operation of the temporary order. The

ERPO Act provides an expedited process for converting a temporary order into a final order: the state court must hold a hearing that a respondent has a right to attend, and the court must find that the respondent poses a significant danger to others by owning or possessing firearms. *See* N.J. Stat. Ann. § 2C:58-24. In Greco's case, the state court scheduled such a hearing five days later, but it was rescheduled multiple times, and it remains pending. Thus, without being formally converted to a final order, that temporary order has remained in effect until the present.

On October 21, 2019, while those state-court proceedings were pending, Greco filed this suit to challenge the constitutionality of the ERPO Act. He argued that the ERPO Act violated the First, Second, Fourth, and Fourteenth Amendments, and he sought a preliminary injunction to prevent its enforcement – not just as applied to him, but to a putative class of persons. As a civil action arising under the Constitution, Greco's suit presented a federal question within the District Court's subject matter jurisdiction. *See* 28 U.S.C. § 1331. The District Court denied Greco's motions for a preliminary injunction and class certification, and it later dismissed the entire action without prejudice on *Younger* abstention grounds.

That dismissal constitutes a final appealable order. *See Lui v. Comm'n on Adult Ent. Establishments*, 369 F.3d 319, 325 (3d Cir. 2004) (holding that "a district court's *Younger* abstention order constitutes a final appealable order under 28 U.S.C. § 1291 because . . . the effect of such an order is to surrender jurisdiction of the federal action to

a state court”). By timely appealing that order, Greco invoked this Court’s appellate jurisdiction. *See* 28 U.S.C. § 1291.

In reviewing *de novo* the District Court’s analysis of the legal elements of *Younger* abstention, *see PDX N., Inc. v. Comm’r N.J. Dep’t of Lab. & Workforce Dev.*, 978 F.3d 871, 881 n.11 (3d Cir. 2020), we will affirm, and that obviates the need to evaluate Greco’s challenges to the orders denying his preliminary injunction and class certification motions.

II.

*Younger* abstention presents one of the limited exceptions to a federal court’s “virtually unflagging obligation” to hear and decide cases within the scope of its jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI)*, 491 U.S. 350, 368 (1989). The doctrine prevents federal courts from hearing cases related to certain ongoing state-court proceedings. *See Sprint Commc’ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (“*Younger* exemplifies one class of cases in which federal-court abstention is *required* . . . .” (emphasis added)); *PDX*, 978 F.3d at 881 n.11. But in so doing, *Younger* abstention effectuates principles of federalism and comity by respecting concurrent state-court proceedings. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606 (1975) (“*Younger* turned on considerations of comity and federalism peculiar to the fact that state proceedings were pending[.]” (alteration added)); *Younger*, 401 U.S. at 44 (justifying the doctrine based on “sensitivity to the legitimate interests of both State and

National Governments”); *PDX*, 978 F.3d at 882 (explaining that *Younger* abstention serves a dual purpose: (i) it promotes comity by restricting federal court interference with ongoing state judicial proceedings, and (ii) it restrains equity jurisdiction “when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm”).

The *Younger* abstention analysis proceeds in two sequential stages. The first examines whether the underlying state-court litigation falls within one of three specific categories of cases. *See Sprint*, 571 U.S. at 78 (identifying three categories of cases that may qualify for *Younger* abstention); *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014). The second examines three additional factors – often referred to as the *Middlesex* factors. *See Sprint*, 571 U.S. at 81–82 (discussing the factors from *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

A. Quasi-Criminal Civil Enforcement Proceedings

One category of cases that may justify *Younger* abstention consists of quasi-criminal state civil enforcement proceedings. *See Sprint*, 571 U.S. at 79; *PDX*, 978 F.3d at 882. To determine whether a civil enforcement proceeding is quasi-criminal, this Circuit makes three inquiries: (i) whether the action was commenced by a state in its sovereign capacity; (ii) whether the action sought to sanction the federal plaintiff for a wrongful act; and (iii) whether the state-court action has other similarities with criminal actions, including whether the state could have pursued enforcement through a parallel criminal statute. *See PDX*, 978 F.3d at 882–83 (citing *ACRA*, 748 F.3d at 138).

Under that analysis, the state-court proceeding here is quasi-criminal. For the first inquiry, the state-court proceeding was initiated by a state law enforcement agency, OHSP. The second inquiry similarly indicates that the state-court proceeding was quasi-criminal because, through that litigation, OHSP sought to temporarily seize Greco's firearms as a sanction for posing an immediate and present danger to others. *See ACRA*, 748 F.3d at 140 (citing *Sprint*, 571 U.S. at 79). Finally, under the third inquiry, although New Jersey does not identify an alternative criminal enforcement mechanism, the state-court civil action has two other similarities with criminal proceedings: it resulted from a law-enforcement investigation, and it issued a 'no knock' search warrant rather than a subpoena or some other traditional means of civil discovery.

B. The *Middlesex* Factors

The second stage of the *Younger* abstention analysis examines the three *Middlesex* factors. Those factors ask whether (i) there is an ongoing state judicial proceeding (ii) that implicates important state interests and (iii) provides an adequate opportunity to raise constitutional challenges. *Sprint*, 571 U.S. at 81–82 (discussing the *Middlesex* factors). Each is satisfied here.

First, the state-court proceeding is ongoing and judicial in nature. To be ongoing for purposes of *Younger* abstention, a state proceeding must have been pending – even if it were stayed – when the federal complaint was filed. *See PDX*, 978 F.3d at 885. Here, the state-court action began with the temporary-order petition on September 5, 2019, and, through a series of stays, has been ongoing ever since. Greco filed his federal complaint

on October 21, 2019, during the pendency of the state-court proceeding, which is indisputably "judicial in nature." *NOPSI*, 491 U.S. at 370; *see also Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 183 (3d Cir. 2014).

Second, the state-court proceedings "implicate an important state interest." *PDX*, 978 F.3d at 885. The ERPO Act seeks to protect New Jersey residents from persons posing "an immediate and present danger." N.J. Stat. Ann. § 2C:58-23(e). That is an important state interest. *See Drake v. Filko*, 724 F.3d 426, 437 (3d Cir. 2013) ("New Jersey has, undoubtedly, a significant, substantial and important interest in protecting its citizens' safety.").

Third, the state-court proceedings offer Greco an "adequate opportunity . . . to raise constitutional challenges." *Middlesex*, 457 U.S. at 432. Greco bears the burden of showing "that state procedural law barred presentation of [his] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979)). Although an indefinite stay of proceedings after a 'temporary' seizure of firearms could – under other circumstances – operate as a procedural bar to the presentation of constitutional claims, Greco does not make that showing here. Nor does anything in the ERPO Act prevent Greco from raising constitutional challenges. To the contrary, the ERPO Act provides for a hearing before the issuance of a final order, *see* N.J. Stat. Ann. §§ 2C:58-24(a), a right to petition to terminate a final order at any time, *see id.* § 2C:58-25, and a right to appeal a final order within 45 days, *see* N.J. Ct. R. 2:2-3(a)(1), 2:4-1(a).

C. The Necessity of Abstention Is Not Overcome Here

For these reasons, the state-court proceeding is a quasi-criminal civil enforcement action that meets the *Middlesex* factors. That satisfies both stages of the *Younger* abstention analysis, and therefore the District Court correctly dismissed this case on that basis. *See Sprint*, 571 U.S. at 72; *PDX*, 978 F.3d at 882–83.

Nothing about this ruling prevents Greco from pursuing his constitutional challenges in state court. To the contrary, if he could not bring his claims in state court, then *Younger* abstention would be inappropriate.[1] *See Moore*, 442 U.S. at 425–26 (explaining that abstention is inappropriate if "state law clearly bars the interposition of the constitutional claims"); *Gibson v. Berryhill*, 411 U.S. 564, 577–79 (1973) (affirming district court's decision not to abstain because the state tribunal was constitutionally disqualified to adjudicate the dispute due to bias). Rather than dispute his ability to

[1] The state-court proceedings offer Greco an "adequate opportunity . . . to raise constitutional challenges." *Middlesex*, 457 U.S. at 432. Greco bears the burden of showing "'that state procedural law barred presentation of [his] claims.'" *Pennzoil*, 481 U.S. at 14 (quoting *Moore*, 442 U.S. at 432). Although an indefinite stay of proceedings after a 'temporary' seizure of firearms could – under other circumstances – operate as a procedural bar to the presentation of constitutional claims, Greco does not make that showing here. *Cf. Gibson v. Berryhill*, 411 U.S. 564, 577-79 (1973) (affirming district court's decision not to abstain because the state tribunal was constitutionally disqualified to adjudicate the dispute due to bias). Nor does anything in the ERPO Act prevent Greco from raising constitutional challenges. To the contrary, the ERPO Act provides for a hearing before the issuance of a final order, *see* N.J. Stat. Ann. §§ 2C:58-24(a), a right to petition to terminate a final order at any time, *see id.* § 2C:58-25, and a right to appeal a final order within 45 days, *see* N.J. Ct. R. 2:2-3(a)(1), 2:4-1(a). Greco therefore does not dispute that he has the ability to pursue his constitutional challenges in state court.

pursue his constitutional challenges in state court, Greco raises two other challenges to *Younger* abstention. Neither succeeds.

Greco first contends that the District Court violated law-of-the-case principles by abstaining under *Younger* after it had ruled on his preliminary injunction and class certification motions. But law-of-the-case principles apply only "when a court *decides* upon a rule of law." *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (emphasis added) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). And in denying Greco's preliminary injunction and class certification motions, the District Court did not address *Younger*. Such silence was not a *decision* that the District Court was later bound to follow.

Greco next argues that *Younger* abstention was improper because he brings a facial challenge to the ERPO Act under the Fourth Amendment. Although some "extraordinary circumstances" may permit a federal court to enjoin an ongoing state proceeding, that limited exception to *Younger* abstention does not include facial challenges to the constitutionality of a state law. *Younger*, 401 U.S. at 53–54. A facial constitutional challenge requires establishing "that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Such a challenge does not present an extraordinary circumstance in the context of *Younger* abstention: state courts can identify and enjoin state laws that have no lawful application under the federal constitution. *See Huffman*, 420 U.S. at 610–11 (rejecting an

argument in effect "urging [the Court] to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities").

* * *

Because the concurrent state-court proceedings satisfy the requirements for *Younger* abstention, we will affirm the order of the District Court.