NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 25-1137, 25-1138, 25-1139, 25-1140
_____

TITLEMAX OF VIRGINIA, INC.,
Appellant in No. 25-1137

TITLEMAX OF DELAWARE, INC.,
Appellant in No. 25-1138

CCFI COMPANIES, LLC; TITLEMAX OF OHIO, INC.,
Appellants in No. 25-1139

TMX FINANCE LLC; TITLEMAX FUNDING, INC.,
Appellants in No. 25-1140

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF BANKING AND SECURITIES
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Nos. 1:24-cv-2212, 1:24-cv-02224, 1:24-cv-02134, 1:24-cv-02093)
District Judge: Honorable Jennifer P. Wilson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 12, 2025

Before: KRAUSE, PHIPPS, and FISHER, *Circuit Judges*.

(Filed: January 7, 2026)

———————

OPINION[*]

———————

FISHER, *Circuit Judge*.

Plaintiffs in this case are a group of affiliated business entities, which we refer to collectively as "TitleMax." In 2024, the Pennsylvania Department of Banking and Securities ordered TitleMax to show cause why it should not pay civil penalties and restitution for violating Pennsylvania's usury laws. In response, TitleMax brought several lawsuits against the Secretary of the Department alleging violations of the Commerce Clause, the Full Faith and Credit Clause, and the Fourteenth Amendment. Four of these suits were consolidated in the United States District Court for the Middle District of Pennsylvania. In a thorough and methodical opinion, the District Court concluded that *Younger v. Harris*[1] and its progeny require abstention and dismissed the complaints. TitleMax appeals. We will affirm.[2]

Although federal courts generally must exercise the jurisdiction granted them, in

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] 401 U.S. 37 (1971).

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 (federal questions). We have jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts). We review de novo a district court's determination of whether to abstain under *Younger*. *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 881–82 n.11 (3d Cir. 2020).

2

"limited circumstances, . . . 'the prospect of undue interference with state proceedings counsels against federal relief.'"[3] This type of abstention, which we call *Younger* abstention, serves two purposes: promoting comity "by restricting federal courts from interfering with ongoing state judicial proceedings" and restraining federal courts' equity powers "when state courts provide adequate legal remedies."[4]

Before abstaining under *Younger*, we ask whether the state proceeding is a civil enforcement proceeding "akin to a criminal prosecution."[5] The factors that determine whether a proceeding is quasi-criminal are met here: (1) Pennsylvania commenced the action "in its sovereign capacity"; (2) the proceeding was brought to "sanction" TitleMax "for [a] wrongful act," namely, charging usurious interest; (3) the proceeding is similar to a criminal action in that there was an "investigation that culminated with the filing of formal charges" through the show-cause order; and (4) as an alternative, Pennsylvania could have pursued criminal enforcement against TitleMax.[6]

TitleMax attacks the third factor, arguing the Department did not properly initiate sanctions after an investigation because TitleMax's corporate entities are presumed

---

[3] *Altice USA, Inc. v. N.J. Bd. of Pub. Utilities*, 26 F.4th 571, 576 (3d Cir. 2022) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)).

[4] *PDX*, 978 F.3d at 882.

[5] *Altice*, 26 F.4th at 576 (quoting *Sprint*, 571 U.S. at 72). Two other types of state proceedings may also warrant *Younger* abstention—criminal prosecutions and civil proceedings that further state courts' judicial functions, *id.*—but neither is at issue here.

[6] *Id.* (internal quotation marks and citations omitted); *see also* 18 Pa. Stat. §§ 4806.1(h), 4806.3 (imposing penalties for "criminal usury").

separate. TitleMax contends that the Department did not investigate "TitleMax" because no such entity exists; that the show-cause order "does not allege misconduct by any individual Appellant" because it refers generically to "TitleMax"; and that "several of [the] Appellants have *never even made a single loan to anyone anywhere*" because some of the corporate entities, rather than making consumer loans, provide back-office functions such as human resources and tax services.[7]

*Cannatella v. California*[8] does not help TitleMax. The parties there—two California attorneys challenging state bar statutes—were "treated independently for purposes of *Younger* abstention" because they were "legally distinct . . . without a sufficiently close relationship or sufficiently intertwined interests."[9] Each attorney practiced separately and neither had a direct interest in the other's disciplinary proceedings, which were not interrelated.[10] That non-relationship is distinguishable from the TitleMax entities' corporate affiliations and intertwined interests.

A First Circuit case, by contrast, persuasively articulates why TitleMax's argument fails. A party there argued that *Younger* abstention did not apply because of problems in the state proceedings, including a defective order and an overly long

---

[7] Appellants' Br. 29–32.
[8] 404 F.3d 1106 (9th Cir. 2005).
[9] *Id.* at 1116.
[10] *Id.* at 1115.

investigation.[11] The First Circuit held that "these alleged shortcomings, though regrettable, are beside the point; courts ordinarily should look to the general class of proceedings" rather than case-specific facts "in determining whether *Younger* abstention applies."[12] The Court ruled that "procedural defects . . . do not change" a proceeding's "fundamental character."[13] We agree. Any naming defects in the show-cause order do not change the quasi-criminal nature of this general class of Pennsylvania proceedings.

Because the state proceeding is quasi-criminal, we move on to the second step of the *Younger* inquiry: whether abstention is warranted under three additional factors.[14] These "*Middlesex* factors"[15] are met here. First, there were "ongoing . . . judicial proceeding[s]"[16] when TitleMax filed its federal complaints in August 2024, because the Department had initiated the action in June 2024 by filing the show-cause order. The proceedings are "judicial" in nature because they are administrative processes subject to state judicial review.[17] Second, there are "important state interests" at stake[18] because

---

[11] *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 195 (1st Cir. 2015).

[12] *Id.* (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365 (1989)).

[13] *Id.*

[14] *Altice*, 26 F.4th at 578.

[15] *Id.*

[16] *Id.* (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

[17] *See Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 183 (3d Cir. 2014); 2 Pa. C.S. § 702 (allowing agency determinations to be appealed to courts).

[18] *Altice*, 26 F.4th at 578 (quoting *Middlesex*, 457 U.S. at 432).

"Pennsylvania has a strong interest in prohibiting usury."[19] And third, TitleMax may raise its constitutional challenges in the state action.[20]

TitleMax argues that the state proceedings are not ongoing under the first factor because, under Pennsylvania law, the Department did not serve the show-cause order correctly. Once again, TitleMax relies on the separateness of its corporate entities, contending that the show-cause order was sent to the wrong entities. But once again, any "procedural defects . . . do not change [the] fundamental character" of the state proceeding.[21] It began before TitleMax filed the federal lawsuits and, thus, was ongoing.

TitleMax argues that the state action does not involve important state interests under the second factor because the federal government's interest in enforcing the Commerce Clause outweighs Pennsylvania's interest in enforcing its usury laws. But in TitleMax's earlier appeal, we held that "Pennsylvania has a strong interest in prohibiting usury"; that "any burden on interstate commerce from doing so is, at most, incidental"; and that "Pennsylvania may therefore investigate and apply its usury laws to TitleMax without violating the Commerce Clause."[22] Contrary to TitleMax's argument, it makes no difference that *Younger* abstention was not on the table there. We substantively answered

---

[19] *TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 241 (3d Cir. 2022).
[20] "[I]t is sufficient under *Middlesex* that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Ohio Civ. Rts. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) (citation omitted).
[21] *Sirva*, 794 F.3d at 195.
[22] *Weissman*, 24 F.4th at 241.

the important-state-interest inquiry of *Middlesex* factor two.

TitleMax also attacks the importance of Pennsylvania's interests by again waving the flag of corporate separateness. It argues that Pennsylvania's interest in prohibiting usury is "not relevant here" because "[n]one of the [TitleMax entities] negotiated or made any loans in Pennsylvania."[23] But this is an inquiry into the merits of the state proceeding—that is, whether Pennsylvania law was violated when some of the TitleMax entities made loans in other states to over 5,000 Pennsylvanians—and "we do not consider the merits 'when we inquire into the substantiality of the State's interest in its proceedings.'"[24] Instead, we consider "the importance of the generic proceedings to the State."[25] Viewed generically, the enforcement of usury laws is important to Pennsylvania.[26]

In sum, both steps of the *Younger* analysis are met: the Pennsylvania proceeding is quasi-criminal and the *Middlesex* factors are present. Federal courts should therefore abstain from exercising jurisdiction absent "exceptional circumstances" such as "bad faith."[27] TitleMax argues the Department exhibited bad faith in two ways: it lacked a "theory of liability" because "none of the [TitleMax entities] ever negotiated or made

---

[23] Appellants' Br. 43.
[24] *PDX*, 978 F.3d at 885 (quoting *O'Neill v. City of Phila.*, 32 F.3d 785, 791–92 (3d Cir. 1994)).
[25] *Id.* (quoting *O'Neill*, 32 F.3d at 792).
[26] *Weissman*, 24 F.4th at 241.
[27] *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (citation omitted).

loans in Pennsylvania," and it "fail[ed] to establish jurisdiction . . . through proper service."[28] These by-now-familiar arguments cannot be repurposed to show bad faith, which means bringing an action "without hope" of success.[29] The Department's arguments about why TitleMax is liable for penalties and restitution, and why there is no fatal service defect, are colorable—though we decline to determine the answers.[30]

Finally, TitleMax argues that some of its claims for relief are prospective and that the District Court improperly abstained, because deciding those claims "would not have interfered with the State Proceeding."[31] The first "prospective" claim is what TitleMax now describes as its request for "an injunction against further extraterritorial regulation."[32] What TitleMax actually requested in the complaints were preliminary and permanent injunctions prohibiting the Department "from initiating any action to enforce the June 2024 Subpoena, to enforce the Order to Show Cause, or to further regulate

---

[28] Appellants' Br. 46–47.

[29] *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).

[30] TitleMax filed two motions, Dkt. 61, 76, asking us to take judicial notice of hundreds of pages filed in the ongoing state proceeding. TitleMax cites these filings throughout its briefing. We will grant the motions, but the filings do not change our conclusion regarding bad faith—or any other part of our analysis. The filings show that the Department took different positions at different times regarding the availability of interlocutory review of administrative orders. That is not necessarily bad faith, though, because the same rule can lead to different results in different circumstances. Notably, the Commonwealth Court agreed with the Department both times.

[31] Appellants' Br. 36.

[32] *Id.*

[TitleMax]."[33]

A federal-court order that prohibits the Department from regulating TitleMax in the future could interfere with the determination in the state proceeding of whether the Department may regulate TitleMax's identical past conduct—and not just by "providing persuasive authority," as TitleMax says.[34] "Pennsylvania courts have long recognized the principle that state courts are bound by the judgments of federal courts."[35] Under the Full Faith and Credit Clause, "a federal claim that was the subject of a final federal judgment that directs ongoing compliance from the Commonwealth" has *res judicata* effect in Pennsylvania courts.[36] So, contrary to what TitleMax says, the relief it requests could interfere with the state proceeding.[37]

The second "prospective" claim TitleMax identifies is its request for "declaratory and injunctive relief against the 2024 subpoena."[38] The District Court held this claim was

---

[33] *See, e.g.*, App. 193.

[34] Appellants' Br. 38.

[35] *In re Stevenson*, 40 A.3d 1212, 1225 (Pa. 2012) (quoting *Del. Valley Citizens' Council for Clean Air v. Commonwealth*, 755 F.2d 38, 44 (3d Cir. 1985)).

[36] *Id.*

[37] Covering its bases, TitleMax quotes a U.S. Supreme Court opinion to support its argument that "a federal proceeding 'may well affect, or for practical purposes pre-empt,' a pending state-court action without triggering *Younger*." Appellants' Br. 38 (quoting *New Orleans Pub. Serv.*, 491 U.S. at 373). That part of *New Orleans Public Service* discusses federal-court challenges to state legislative (not judicial) proceedings. *New Orleans Pub. Serv.*, 491 U.S. at 372–73. Because this case involves state judicial (not legislative) proceedings, TitleMax's *New Orleans Public Service* quotation is irrelevant.

[38] Appellants' Br. 36, 38.

not ripe—that is, the claim did not "present[] a real and substantial threat of harm," but rather "involve[d] uncertain and contingent events."[39] TitleMax argues the claim is ripe because the subpoena is part of an ongoing campaign that "has a chilling effect on future activity protected by the Dormant Commerce Clause."[40] This "chilling effect" is not a concern, however: we have held that "Pennsylvania may . . . investigate and apply its usury laws to TitleMax without violating the Commerce Clause."[41] So case law forecloses the only argument TitleMax offers to show ripeness.

The District Court correctly abstained from exercising jurisdiction, promoting *Younger*'s twin goals of comity and restraint where the state provides an adequate remedy.[42] For the foregoing reasons, we will affirm.

---

[39] *Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 523 (3d Cir. 2018) (quoting *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006)).

[40] Appellants' Br. 39.

[41] *Weissman*, 24 F.4th at 241.

[42] *PDX*, 978 F.3d at 882.